UNITED STATES v. NORTHERN PAC. R. CO.

(District Court, W. D. Washington N. D. May 15, 1906.)

No. 441.

PUBLIC LANDS (§ 79*)—RAILROAD GRANT—EXCEPTIONS FROM GRANT—ABANDONED HOMESTEAD ENTRY.

Land within the place limits of the grant to the Northern Pacific Railroad Company of May 31, 1870, which at such date, as shown by the books of the land office, was subject to a homestead entry, but which entry had in fact been abandoned and was canceled prior to the definite location of the road, was vacant public land which passed under the grant.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 246; Dec. Dig. § 79.*]

In Equity. On bill and answer.

Jesse A. Frye, U. S. Atty.
J. B. Kerr, for Northern Pac. R. Co.

HANFORD, District Judge. This suit originally had for its object the cancellation of patents issued to the Northern Pacific Railroad Company for several tracts of land, but the government has aban-

doned the prosecution of the case with respect to all of the lands except one tract, and by a stipulation of the parties the case has been submitted for determination upon the amended bill and answer.

The tract referred to was settled upon and claimed under the homestead law by a man named Chambers, June 1, 1866. Chambers complied with the requirements of the homestead law so far as to initiate his claim by the filing of the homestead application in the proper district land office, and by the records of the land office his claim appeared to be an existing homestead claim until the year 1873, when it was canceled by order of the Commissioner of the General Land Office. The land is within the "place" limits of the grant to the Northern Pacific Railroad Company, for its connecting line from Portland to its Puget Sound terminus, made by the joint resolution of Congress of May 31, 1870, and, after the construction of said line of railroad, this tract, with others, was conveyed by a patent to the railroad company as "earned land." The ground upon which the government sues for cancellation of the patent is that the land was not granted, and that the patent was erroneously issued.

The question to be decided is, whether the land was at the date of the grant, viz., May 31, 1870, vacant public land free from any claim or right of a settler, or whether, by reason of the homestead filing of Chambers, it had been segregated from the body of the public domain so that it was not comprehended within the terms of the grant to the Northern Pacific Railroad Company. The defendant admits that the land was covered by Chambers' homestead application, which was, according to the record in the land office, apparently an existing claim attached to the land until 1873; but pleads in avoidance that Chambers had in fact abandoned the land more than six months prior to May 31, 1870, and that on said date he had ceased to have or assert any claim to the land, and that it was then vacant public land, subject to the grant. In a hearing upon bill and answer, the relevant facts averred in the answer are to be considered as true, to the same extent as if proved by a preponderance of the evidence. See Amendment to Equity Rule 41; Encyc. Pl. & Pr. vol. 1, p. 921. I must therefore assume, for the purpose of this decision, that it is true that Chambers had abandoned his homestead claim previous to the date of the grant, and that there was then no existing adverse claim which could interfere with the grant to the railroad company.

The decision of the Supreme Court, in the case of Bardon v. Northern Pac. R. Co., 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806, establishes the proposition that land which at the date of the granting act was segregated from the public lands within the limits of the grant, by reason of a settler's claim to it having attached, does not by the subsequent action of the Land Department canceling the settler's claim, before the location of the grant, pass to the Northern Pacific Railroad Company. Other decisions hold that, if the settler's claim had attached to the land previous to the definite location of the line of railroad, such claim has the effect to except the land claimed from the grant. It is necessary, in order to reconcile these decisions with the De Lacey Case, 174 U. S. 622, 19 Sup. Ct. 791, 43 L. Ed. 1111, and Oregon & C. R. Co. v. United States, 190 U. S. 186, 23 Sup.

Ct. 673, 47 L. Ed. 1012, to understand that there is a substantial difference between an asserted adverse claim, and a dead claim which is apparent only, upon the records of the land office. An actual existing claim, although invalid and erroneously asserted, and although it be finally extinguished subsequently to the time when the grant becomes located, does except the land claimed from the grant, and, if the land covered by such a claim has been inadvertently patented to the railroad company, the government has the right to a decree annulling the patent. The converse proposition, that a mere record in the land office is not sufficient to defeat the grant to the railroad company, if in fact there be no real claimant, is disputed by the attorney for the United States, upon the authority of Hastings & D. R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363, and Whitney v. Taylor, 158 U. S. 85, 15 Sup. Ct. 796, 39 L. Ed. 906. And it is his contention that those cases, and the case at bar, are distinguishable from the De Lacey Case, and the Oregon & California Railroad Case, by the fact that the land office records afforded all the information necessary to support a finding that the pre-emption claim involved in the De Lacey Case, and the donation claim involved in the Oregon & California Railroad Case, had been extinguished, and that the principles applied by the Supreme Court in those cases cannot be applied when it is necessary to depend upon evidence other than the land office records to clear the land from adverse claims. I might be convinced by the force of this argument, if the defendant were asking the court to adjudicate a forfeiture of rights for nonobservance on the part of the homestead claimant of the requirements of the homestead law, but the plea in the defendant's answer is different. The averment of the answer is that more than six months prior to May 31, 1870, Chambers "had fully and entirely abandoned said land, and had ceased to have or assert any claim or right thereto whatsoever, and said land then was, and thereafter remained, vacant public land of the United States, free from all claims or rights whatsoever except for the rights of the Northern Pacific Railroad Company." And it is admitted by the pleadings that the homestead entry was canceled of record, for abandonment of the claim, November 11, 1873, which date was prior to the date of definite location of the line of railroad, so that the land was, in fact, free from adverse claims and rights at the date of the grant, and by the records of the land office it appeared to be, and was in fact, free from adverse claims and rights and vacant public land of the United States, at the time when the grant became located.

In its opinion, in the Oregon & California Railroad Case, the Supreme Court said:

"It may be said that presumptively the land had been reserved, as shown by the donation notification, and for aught that appeared the donee might still be in possession; but we know of no reason why the railroad company may not show the actual facts as well as an individual who might desire to enter the land upon his own account."

I consider this to be a decision by the Supreme Court of the very question raised by the argument of the United States attorney, and to be decisive of the whole controversy in this case.

I, also, hold that the decisions in Hastings & D. R. Co. v. Whitney, and Whitney v. Taylor, are not authorities in point, for the reason that in those cases there was no admission that the claims had been actually abandoned previous to the dates of the respective granting acts, and the Supreme Court did not pass upon the question as to the effect of an actual extinguishment of a claim by intentional abandonment thereof in either of those cases.

The answer contains other averments of matters constituting equitable grounds of defense which I deem unimportant, for the reason that I have reached the conclusion that the patent conveying the land in controversy to the railroad company was issued lawfully, and on that ground I direct that a decree be entered dismissing this suit.[1]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] Reversed by stipulation in the Circuit Court of Appeals January 2, 1908.